# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTTIE HURST, | : | CIVIL NO. 3:10-CV-1868 |
| Petitioner, | : | (Judge Munley) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| B. A. BLEDSOE, WARDEN, | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

**I.     Introduction**

The Petitioner in this case, Scottie Hurst, is a criminal recidivist and convicted felon who has been charged and convicted both in state and federal courts of an array of offenses involving firearms possession and trafficking, destruction of property, and repeated assaults. Hurst also comes before the Court as someone who undeniably has persisted in violent crime and other misconduct while inside the confines of the federal prison system. Thus, Hurst is currently serving a series of federal sentences which total 330 months in the aggregate, including a 42-month sentence imposed while he was in prison for assaulting prison staff. In addition, it is undisputed that Hurst has been the subject of major disciplinary hearings over the past seven years while in prison, and has been found guilty of major institutional infractions during his term of impressment with the Bureau of Prisons.

1

Indeed, it is this record of institutional misconduct that now brings Hurst into federal court. While Hurst does not deny, dispute or in any way contest any of the disciplinary infractions, he insists that the penalties imposed upon him by the Bureau of Prisons in terms of disallowance and forfeiture of good time credits are unlawful, excessive and inappropriate. Therefore, the Petitioner invites this Court to review and revise the sentence credit calculation done by the Federal Bureau of Prisons in his case. Specifically, in the face of his record of institutional misconduct, Hurst urges the Court to find that the Bureau of Prisons has erred in its calculation of his accrued good time credit, and asks us to restore more than 900 days of good time credit to him. Having conducted this review, we find no error in this good time credit calculation. Therefore, we recommend that this petition for writ of habeas corpus be denied.

## II. Statement of Facts and Case

### A. Hurst's Criminal History and Record of Institutional Misconduct

In this case the interplay of state and federal sentences, and grave institutional misconduct, which forms the basis for this sentence credit calculation began on March 27, 1997, when Hurst was charged in Cumberland County, Tennessee, with Destruction of County Property, Evading Arrest, Possession of Drug Paraphernalia, Possession of a Handgun, and Simple Possession of Marijuana. (Doc. 9, Ex. 1, Liotti Decl., ¶ 3.) One week later, on April 3, 1997, Hurst was sentenced on these state

charges, and was transferred to Fentress County, Tennessee, (Doc. 9, Ex. 1, ¶ 4), where he was sentenced on September 12, 1997, to 3 years imprisonment on other state offenses, a sentence that was ordered to run concurrently with Hurst's cases in Cumberland County, and any federal charges. (Doc. 9, Ex. 1, ¶ 5.)

Three months later, on December 22, 1997, Hurst was brought into federal custody pursuant to a federal writ, to face federal firearms theft and trafficking charges. At the same time, Hurst was sought by state authorities in Knox County, Tennessee, where he was wanted on yet another serious charge, Aggravated Assault/Vandalism. (Ex. 1, ¶¶ 6-7; Attach. 2, USMS Individual Custody and Detention Report, 2.) Ultimately, both of these charges also resulted in convictions. Thus, on September 23, 1998, Hurst was sentenced to a three-year term of imprisonment by the Knox County Criminal Court. (Doc. 9, Ex. 1, ¶ 8; Attach. 3, Judgment of Knox Co. Crim. Ct.).

Three months later, on December 11, 1998, Hurst was sentenced in the United States District Court for the Eastern District of Tennessee to a 288-month term of imprisonment for Conspiracy to Transport and Possess Stolen Firearms and Ammunition in Interstate Commerce in violation of Title 18 U.S.C. § 371, Possession of Stolen Firearms and Ammunition in Interstate Commerce in violation of Title 18 U.S. C. § 922(j), Aiding and Abetting in the Transportation of Stolen Firearms in Interstate Commerce in violation of Title 18 U.S.C. § 922(I), and Convicted Felon in

Possession of Firearm in violation of Title 18 U.S.C. § 922(g)(1). (Doc. 9, Ex. 1, ¶ 9; Attach. 4, Judgment in a Criminal Case, E.D. TN No. 3:97CR00151-001.) This sentence was ordered to run concurrently with the sentence imposed against Hurst in Fentress County, Tennessee. (Id.)

Once Hurst completed service of his pre-existing state sentences, on July 6, 2004, he was paroled from his state charges and immediately remanded to federal custody to complete service his federal sentence. (Doc.9, Ex. 1, ¶ 10; Attach. 2, 2.) While in federal custody Hurst persisted in serious, violent crimes. On March 8, 2007, Hurst was convicted and sentenced in the United States District Court for the Eastern District of Kentucky to a 42-month consecutive term for Assaulting a Prison Official in violation of Title 18 U.S.C. § 111(a)(1). (Doc. 9, Ex. 1, ¶ 11; Attach. 5, Judgment in a Criminal Case, E.D. KY No. 6:06-CR-124-01-KKC.) Thus, as a result of this prison assault conviction by 2007 Hurst faced aggregate federal sentences totaling 330 months in prison.

Hurst's institutional misconduct was not limited to convictions for serious violent crimes. In addition, the Bureau of Prisons has documented the following pattern of disciplinary proceedings relating to Hurst over the past seven years: First, between June 14, 2004, and June 13, 2005, Hurst was sanctioned by the Disciplinary Hearing Officer to a total disallowance of 246 days of good time. The following year, from June 14, 2005, through June 13, 2006, Hurst was sanctioned by the Disciplinary

Hearing Officer to a total disallowance of an additional 215 days of good time. During his third year in federal custody, from June 14, 2006, through June 13, 2007, Hurst accrued additional institutional infractions and was sanctioned by the Disciplinary Hearing Officer to a total disallowance of 68 days of good time. The following year, from June 14, 2007, through June 13, 2008, Hurst engaged in further misconduct and was sanctioned by the Disciplinary Hearing Officer to a total disallowance of 204 days of good time. Despite the imposition of these penalties, the following year, June 14, 2008, through June 13, 2009, Hurst was sanctioned again by the Disciplinary Hearing Officer to a total disallowance of 121 days of good time. During the most recently competed twelve month period, from June 14, 2009, through June 13, 2010, Hurst was further sanctioned by the Disciplinary Hearing Officer to a total disallowance of 229 days of good time. Finally, since June 14, 2010, Hurst has received an additional sanction by the Disciplinary Hearing Officer, the total disallowance of 81 days of good time credit. (Doc. 9, Ex. 1, ¶¶ 13-20; Attach. 9, Sentence Monitoring Good Time Data.) Thus, in total, Hurst has been sanctioned by the DHO to the disallowance of good time credits totaling 1,166 days as a result of these institutional misdeeds on his part. (Doc. 9, Ex. 1, ¶ 22.)

### B. Bureau of Prisons' Good Time Denial Policies

In fact, despite these penalties proposed in various disciplinary hearings over the years, a significantly smaller number of these good-time credits have actually been

stripped from Hurst than the 1,166 days proposed by disciplinary hearing officers. The reason that the actual sanctions imposed upon Hurst has been different, and less, than that recommended by the various prison Disciplinary Hearing Officers has been that the discretion of prison officials to deny inmates like Hurst good time credit is prescribed and limited both by statute and by Bureau of Prisons policy.

First, by statute, Congress has provided that:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. . . . . [I]f the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate.

18 U.S.C. § 3624(b)(1).

The Bureau of Prisons, the agency charged with responsibility for administering this good-time credit system and denying recalcitrant inmates such credits, has by agency policy also established limitations on the extent to which inmates can be denied good-time credit for time spent in custody. Program Statement 5884.03, Good Conduct Time Under the Prison Litigation Reform Act, clarifies how good conduct time is awarded and denied. (Ex. 1, ¶ 13; Attach. 8, PS 5884.03.) See also 28 C.F.R. §541.13.

With respect to denial of good-time credits, this policy statement, embraces two concepts, "disallowance" of good time credit and "forfeiture" of good time credit. The term "disallow" is used to describe the withholding of good conduct time for the current year in which some prison infraction occurs. (Id.) The term "forfeit," in turn, is used to describe the denial of good conduct time which the inmate had earned in past years, which was not subject to a "disallowance" because of a Discipline Hearing Officer sanction in that year. (Id.) As to each of these categories of good time penalties, forfeitures and disallowances, the Bureau of Prisons as a matter of policy has determined that an inmate may only have a total of 54 days of past good time credits forfeited, and a total of an additional 54 days of current good time credits disallowed, in a particular year.

In Hurst's case, the Bureau of Prisons reports that it has applied these restrictions set by statute and policy when denying good time credits to this inmate. Thus, the Bureau of Prisons reports that it began calculating Hurst's accrual of good time credit from 1997-1998, the period when Hurst first came into federal custody. (Doc. 9, Ex. 1 attach. 9.) While Hurst was credited with accruing good time beginning in 1997-1998, once he actual came into federal custody in 2004 he forfeited all of that accrued good time due to his repeated violations of prison rules. Hurst also lost through disallowance the good time which he could have earned from 2004 to the present through his repeated misdeeds. Thus, between 2004 and the present a total of

7

378 days of good time were disallowed by prison; that is, withheld for the current year in which some prison infraction occurred. (Id.) Furthermore, prison officials also forfeited an additional 378 days of good time that had accrued to Hurst for the period from 1997 through 2004; that is, they denied this good conduct time which the inmate had earned in these past years, due to his continued misconduct. This total disallowance and forfeiture of good time amounted to the loss of 756 days of good time, a total which, while substantial, fell far below the proposed disciplinary penalties of these prison infractions, which totaled 1,166 days.

### C. Hurst's Habeas Petition

Dissatisfied with this sentence calculation and the disallowance of his good time credits, Hurst has filed this habeas petition which demands the reinstatement of between 1,500 and 900 days of good time. (Docs. 1 and 10.) Hurst's petition is a remarkable document. In it, Hurst does not contest the fact that he has continually engaged in misconduct since entering the federal prison system. Instead, Hurst simply insists that he has some form of entitlement to good time credits which have been forfeited, and urges this Court to order the reinstatement of these good time credits. This petition has been briefed by the parties (Docs. 1, 9, and 10) and is now ripe for resolution. For the reasons set forth below, it is recommended that the petition be denied, since the Bureau of Prisons has accurately calculated the sentence credit that

Hurst is entitled to receive on the facts of this case in accordance with the law and policies which govern such credits.

**III. Discussion**

**A. Since the Bureau of Prisons Has Reasonably Interpreted the Law Governing Good Time Credits, Hurst Is Not Entitled to Have the Courts Compel a Different Reading of the Law Which Gives Him Good Time Credits He Is Not Entitled to Receive**

At bottom, Hurst's petition asks this Court to strike down the exercise of discretion by the Bureau of Prisons in terms of its decisions over the past seven years to deny good-time credits, and forfeit prior good-time credits, in the case of this inmate, who has engaged in a persistent pattern of prison misconduct. Hurst makes this claim on the basis of his assertion that prison officials are legally powerless to forfeit good time that he has obtained in years past, even if he subsequently engages in serious misconduct while in prison. Moreover, in advancing this claim Hurst also urges this Court to ignore his own persistent bad conduct, and award him more than 900 days in good-conduct time.

This we cannot do. The awarding and denial of good-time credits is a function which is, by statute, the responsibility of the Bureau of Prisons. Indeed, the statute which defines these good-time credits, 18 U.S.C. §3624, expressly confers discretion to the Bureau of Prisons to deny such credits stating: "[I]f the Bureau determines that

. . . the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate." 18 U.S.C. § 3624(b)(1). Given the plain language of §3624, courts have consistently held that: "it is the BOP, not courts, which determines whether federal inmates should receive good time credits. United States v. Evans, 1 F.3d 654 (7th Cir.1993)." Otto v. Warden, FCI-Allenwood, No. 04-1774, 2005 WL 2031142, *2 (M.D.Pa. July 27, 2005).

In this setting, when courts are asked to evaluate an agency's interpretation of a statute which confers discretionary decision-making authority upon that agency, courts are enjoined to engage in what is commonly referred to Chevron analysis. This Chevron analysis is derived from the Supreme Court's decision in Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837 (1984), and prescribes the following standard of review for agency interpretations of statutes within the agency's jurisdiction:

> Our review of an agency's interpretation of its governing statute is normally subject to Chevron deference. This standard of review requires a two-step inquiry: First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous

> with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute. Chevron, 467 U.S. at 842-43.

Woodall v. Federal Bureau of Prisons, 432 F.3d 235, 248 (3d Cir. 2005).

Applying this deferential Chevron analysis, courts have frequently had occasion to consider in general terms whether the Bureau of Prisons' interpretation of 18 U.S.C. §3624, the federal good time statute, is a reasonable one entitled to deference by the courts. Without exception, the courts have found, when considering the Bureau of Prisons' interpretation of various aspects of §3624, that Chevron deference to the agency's views regarding how best to apply this statute is warranted. See, e.g., Sash v. Miner, 246 F. App'x 816 (3d Cir. 2007); O'Donald v. Johns, 402 F.3d 172 (3d Cir. 2005)(approving of Chevron deference to BOP interpretation of §3624, citing authority from the First, Seventh and Ninth Circuit Courts of Appeals); Carlucci v. Holt, 153 F. App'x 844 (3d Cir. 2005). While none of these cases dealt with the precise issue raised here regarding the Bureau of Prisons' interpretation of the scope of its discretionary authority to deny good-time credits under §3624(b), we find that this particular agency policy should also be afforded Chevron deference since the agency's construction of its authority under §3624 is plainly a permissible and reasonable interpretation of the statute.

At the outset, this agency interpretation–which permits forfeiture of past good time credits–is entirely consistent with the language of the statute, which clearly confers substantial discretion to the Bureau of Prisons in making decisions regarding the denial of good-time credits. That statute states that "[I]f the Bureau determines that . . . the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate." 18 U.S.C. § 3624(b)(1). It is difficult to imagine a broader, and more plainly stated, delegation of discretion to an agency than that set forth in §3624(b).

Furthermore, the agency's interpretation of its discretion, which would permit it to forfeit good-time credits earned in years past, seems entirely consistent with the language of the statute which flatly states that: "Notwithstanding any other law, credit awarded under this subsection after the date of enactment of the Prison Litigation Reform Act *shall vest on the date the prisoner is released from custody*." 18 U.S.C. § 3624(b)(2)(emphasis added). By expressly providing that good-time credits only vest on the date a prisoner is released, Congress flatly rejected the legal lynchpin of Hurst's habeas petition, his claim that he has an entitlement to retention of good-time credits which he has received in years past, and that those previously earned good-time credits may not be disturbed by prison officials.

Instead of creating some property right or entitlement to these credits, Congress stated in clear and precise terms that the assessment and vesting of these credits only occurs at the time of a prisoner's release, when the totality of his conduct can be evaluated. Implicit in this Congressional declaration is the concept that the Bureau of Prisons may revoke good-time credits that have been previously earned as a sanction for grave institutional conduct. Indeed, to deny this authority to the Bureau of Prisons would be to strip 18 U.S.C. § 3624(b)(2) of any meaning, since the Bureau of Prisons would then be powerless to enforce Congress' mandate that these credits only vest "on the date the prisoner is released from custody." 18 U.S.C. § 3624(b)(2).

In short, the Bureau of Prisons' interpretation of 18 U.S.C. § 3624(b) is a reasonable one, which draws direct support from the text of the statute. Therefore, that interpretation should be accepted by the courts, and Hurst's efforts to set aside that reasonable agency interpretation of the statute governing good-time credit, and receive 900 days of good time credit that manifestly are not warranted given this inmate's on-going misconduct, must be rejected.

## IV.   **<u>Recommendation</u>**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED, and that a certificate of appealability should not issue.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 23d day of November, 2010.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
