# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SCOTTIE R. HURST,
   Petitioner

  v.

WARDEN B.A. BLEDSOE,,
   Respondent

No. 3:10cv1868

(Judge Munley)

## ORDER

  Before the court for disposition are Petitioner Scottie Hurst's objections (Doc. 13) to Magistrate Judge Martin C. Carlson's report and recommendation (Doc. 11) which proposes that the petition for a writ of habeas corpus (Doc. 1) be denied and that a certificate of appealability should not issue.  See 28 U.S.C. § 2253(c) and 3d Cir. LAR 22.

## I. BACKGROUND[1]

  On March 27, 1997 Hurst was charged in Cumberland County, Tennessee, with Destruction of County Property, Evading Arrest, Possession of Drug Paraphernalia, Possession of a Handgun, and Simple Possession of Marijuana.  (Doc. 9, Ex. 1, Liotti Decl., ¶ 3).  One week later, on April 3, 1997, Hurst was sentenced on these state charges, and was transferred to Fentress County, Tennessee, (Doc. 9, Ex. 1, ¶ 4),where he was sentenced on September 12, 1997, to three years imprisonment on other state offenses, a sentence that was ordered to run concurrently with Hurst's cases in Cumberland County, and any federal charges.  (Doc. 9, Ex. 1, ¶ 5).  Three months later, on December 22, 1997, Hurst was brought into federal custody pursuant to a federal writ, to face federal firearms, theft and trafficking charges.  At the same time, Hurst was sought by state authorities in Knox County, Tennessee, where he was wanted on another

---

[1] We adopt the magistrate judge's statement of the background facts.

serious charge, Aggravated Assault/Vandalism. (Ex. 1, ¶¶ 6-7; Attach. 2, USMS Individual Custody and Detention Report, 2). Ultimately, both of these charges also resulted in convictions. Thus, on September 23, 1998, Hurst was sentenced to a three-year term of imprisonment by the Knox County Criminal Court. (Doc. 9, Ex. 1, ¶ 8; Attach. 3, J. of Knox Co. Crim. Ct.).

Three months later, on December 11, 1998, Hurst was sentenced in the United States District Court for the Eastern District of Tennessee to a 288-month term of imprisonment for Conspiracy to Transport and Possess Stolen Firearms and Ammunition in Interstate Commerce in violation of Title 18 U.S.C. § 371, Possession of Stolen Firearms and Ammunition in Interstate Commerce in violation of Title 18 U.S.C. § 922(j), Aiding and Abetting in the Transportation of Stolen Firearms in Interstate Commerce in violation of Title 18 U.S.C. § 922(I), and Convicted Felon in Possession of Firearm in violation of Title 18 U.S.C. § 922(g)(1). (Doc. 9, Ex. 1, ¶ 9; Attach. 4, J. in a Crim. Case, E.D. Tenn. No. 3:97CR00151-001). This sentence was ordered to run concurrently with the sentence imposed against Hurst in Fentress County, Tennessee. (Id).

Once Hurst completed service of his pre-existing state sentences, on July 6, 2004, he was paroled from his state charges and immediately remanded to federal custody to complete service of his federal sentence. (Doc.9, Ex. 1, ¶ 10; Attach. 2, 2).

On March 8, 2007, Hurst was convicted and sentenced in the United States District Court for the Eastern District of Kentucky to a 42-month consecutive term for Assaulting a Prison Official in violation of Title 18 U.S.C. § 111(a)(1). (Doc. 9, Ex. 1, ¶ 11; Attach. 5, J. in a Crim. Case, E.D. Ky. No. 6:06-CR-124-01-KKC). Thus, as a result of this prison assault conviction, by 2007 Hurst faced aggregate federal sentences totaling 330

months in prison.

In addition, the Bureau of Prisons ("BOP") has documented the following pattern of disciplinary proceedings relating to Hurst over the past seven years: first, between June 14, 2004, and June 13, 2005, Hurst was sanctioned by the Disciplinary Hearing Officer ("DHO") to a total disallowance of 246 days of good time. The following year, from June 14, 2005, through June 13, 2006, Hurst was sanctioned by the DHO to a total disallowance of an additional 215 days of good time. During his third year in federal custody, from June 14, 2006, through June 13, 2007, Hurst accrued additional institutional infractions and was sanctioned by the DHO to a total disallowance of 68 days of good time. The following year, from June 14, 2007, through June 13, 2008, Hurst engaged in further misconduct and was sanctioned by the DHO to a total disallowance of 204 days of good time. Despite the imposition of these penalties, the following year, June 14, 2008, through June 13, 2009, Hurst was sanctioned again by the DHO to a total disallowance of 121 days of good time. During the most recently competed twelve month period, from June 14, 2009, through June 13, 2010, Hurst was further sanctioned by the DHO to a total disallowance of 229 days of good time. Finally, since June 14, 2010, Hurst has received an additional sanction by the DHO, the total disallowance of 81 days of good time credit. (Doc. 9, Ex. 1, ¶¶ 13-20; Attach. 9, Sentence Monitoring Good Time Data).

Thus, in total, Hurst has been sanctioned by DHOs to the disallowance of good time credits totaling 1,166 days as a result of these institutional misdeeds on his part. (Doc. 9, Ex. 1, ¶ 22). Despite these proposed penalties, significantly fewer good-time credits have actually been stripped from Hurst than the 1,166 days. The reason that the actual sanctions imposed upon Hurst have been different, and less, than that

recommended by the various prison Disciplinary Hearing Officers has been that the discretion of prison officials to deny inmates like Hurst good time credit is prescribed and limited both by statute and by BOP policy, as we explain below.

Thus, the BOP reports that it began calculating Hurst's accrual of good time credit from 1997-1998, the period when Hurst first came into federal custody. (Doc. 9, Ex. 1 attach. 9). While Hurst was credited with accruing good time beginning in 1997-1998, once he actually came into federal custody in 2004 he forfeited all of that accrued good time due to his repeated violations of prison rules. Hurst also lost through disallowance the good time which he could have earned from 2004 to the present through his repeated misdeeds. Thus, between 2004 and the present a total of 378 days of good time were disallowed by prison; that is, withheld for the current year in which some prison infraction occurred. (Id.) Furthermore, prison officials also forfeited an additional 378 days of good time that had accrued to Hurst for the period from 1997 through 2004; that is, they denied this good conduct time which the inmate had earned in these past years, due to his continued misconduct. This total disallowance and forfeiture of good time amounted to the loss of 756 days of good time.[2]

Hurst filed a petition for a writ of habeas corpus on September 7, 2010, challenging the BOP's disallowance and forfeiture of his good time credits. (Doc. 1). Respondent Warden B. A. Bledsoe filed his response on November 5, 2010. (Doc. 9). On November 23, 2010, Magistrate Judge Martin C. Carlson issued a report and recommendation (Doc. 11) which

---

[2] The record indicates that Hurst has exhausted his administrative remedies and the Respondent does not dispute this. (See Request for Administrative Remedy and Appeals (Doc. 1 at 12 -18)).

4

proposes that the petition for a writ of habeas corpus be denied. On December 15, 2010, we adopted the report and recommendation and denied the petition for a writ of habeas corpus, having received no objections within the prescribed time period. (Doc. 12). On December 17, 2010, the court received Hurst's objections and the case was reopened for an evaluation of the merits. (Docs. 13, 14).

## II. JURISDICTION

Because this case is brought under 28 U.S.C. §§ 2241, the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

## III. STANDARD OF REVIEW

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636 (b)(1)(C); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

A *pro se* pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A habeas petition and any supporting submissions filed *pro se* must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney Gen., 878 F.2d 714, 721-22 (3d Cir. 1989). However, a federal district court can dismiss a habeas petition if it appears from the face of the petition that the petitioner is not entitled to relief. See

Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir.1985), cert. denied, 490 U.S. 1025 (1989). See also 28 U.S.C. §§ 2243, 2255.

Petitioner Hurst seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Section 2241"). That statute "confers jurisdiction on district courts to issue writs of habeas corpus in response to a petition from a state or federal prisoner who 'is in custody in violation of the Constitution or laws or treaties of the United States.'" Coady v. Vaughn, 251 F.3d 480, 484 (3d Cir. 2001). The federal habeas statute also requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed." Lee v. Stickman, 357 F.3d 338, 342 (3d Cir. 2004) (quoting Maleng v. Cook, 490 U.S. 488, 490-91 (1989)).

Section 2241, unlike other federal habeas statutes, "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." Coady, 251 F.3d at 485. (quoting 28 U.S.C. §§ 2241(a) and (c)(3)). Although the Third Circuit Court of Appeals has yet to clearly define the meaning of "execution" in this context, it has cited approvingly holdings from other circuits finding that a Section 2241 motion properly challenges "'such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.'" Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242 (3d Cir. 2005) (quoting Jimian v. Nash, 245 F.3d 144, 147 (2d Cir. 2001)).

**IV. DISCUSSION**

Petitioner Hurst argues, first, that he is owed 523 days of good time credit he earned dating back to June 14, 1997 while in state custody serving state sentences concurrent with his federal sentences. (See TOMIS Offender Sentence Letter (Doc. 1 at 8-9) (indicating that Hurst

6

earned 144 days of pretrial credit and 46 days of credit on his Fentress County charges and 333 days of credit on his Morgan County charges, for a total of 523 days of credit)). He argues next that, by only being credited fifty-four days of good time credit per year (under the federal scheme), the BOP is unconstitutionally lengthening his sentence in violation of his due process rights. He also argues that the BOP disallowed and forfeited 1,407 days-worth of good time credits, which is 1,083 too many by his calculation. (See Sentence Monitoring Good Time Data of June 17, 2010 (Doc. 1 at 11)). The magistrate judge disagrees with the petitioner's arguments, finding that the BOP has discretion to disallow or forfeit good time credit and that the BOP's calculation of Hurst's good time credit was a valid exercise of that discretion.

Hurst objects that: (1) the magistrate judge ignored his argument that he deserves the 523 days of credit awarded under his state sentence; (2) insofar as section 3624 says nothing about forfeiture, the BOP's interpretation of the statute is not reasonable; and that (3) even if the BOP's interpretation of section 3624 allowing forfeiture is reasonable, BOP policy only allows fifty-four days of forfeited time per year, meaning he is owed 249 days of forfeited good time credit because the BOP twice forfeited more than fifty-four days in a year. We will address the petitioner's arguments in turn.

**1. State Credit**

Regarding Hurst's first argument, the court will assume that Hurst is correct– that the exhibits he attaches indicate he earned 523 days of good time credit under the state of Tennessee's good time credit program. Thus, it may be the case that if Hurst were only sentenced on state charges, he would have been able to take advantage of the 523 days of good time credit he claims to have earned. However, Hurst's state

7

sentences were to run concurrently with his federal sentence, and it is federal law which governs good time credit for federal inmates. Thus, the 523 days awarded under state law have no bearing on the BOP's calculation of his good time credit. In fact, the record indicates that on a yearly basis, beginning on June 14, 1997, Hurst received fifty-four days of good conduct time from the BOP. (Sentence Monitoring Good Time Data October 8, 2010 (Doc. 9-2 at 41)). Thus, he was in fact earning good conduct time while serving concurrent state sentence. By the time he was transferred to the custody of the U.S. Marshals in 2004 (or at least by June 13, 2004), he had earned 378 days of good conduct time under federal law. Hurst cannot be credited good time under both state and federal law– at least not if his state and federal sentences are served concurrently. Therefore, petitioner's objections will be overruled.

**2. Interpretation of section 3624(b)**

The BOP's authority to issue good time credit to inmates is prescribed by 18 U.S.C. § 3624(b), which provides:

> **(b) Credit toward service of sentence for satisfactory behavior.--**
>
> (1) Subject to paragraph (2), a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations. Subject to paragraph (2), if the Bureau determines that, during that year, the prisoner has not satisfactorily complied with such institutional regulations, the prisoner shall receive no such credit toward service of the prisoner's sentence or shall receive such lesser credit as the Bureau determines to be appropriate. . . .
>
> (2) Notwithstanding any other law, credit awarded

8

>under this subsection after the date of enactment of
>the Prison Litigation Reform Act shall vest on the
>date the prisoner is released from custody.

The BOP interprets this statute such that "for inmates serving a sentence for an offense committed on or after April 26, 1996, the Bureau will award . . . 54 days credit for each year served (prorated when the time served by the inmate for the sentence during the year is less than a full year) if the inmate has earned or is making satisfactory progress toward earning a GED credential or high school diploma[.]"[3] 28 C.F.R. § 523.20(c); see also Barber v. Thomas, - - U.S. - -, 130 S. Ct. 2499, 2505 (2010) (upholding BOP's method of calculating good time credit based on time served, and not based on the length of the sentence imposed). Subsection (e) of that regulation notes that good conduct time awarded for the year is "subject to disciplinary disallowance (see tables 3 through 6 in § 541.13 of this chapter)." Id. at § 523.20(e).

In turn, section 541.13 sets forth sanctions, including disallowance and forfeiture of good time credit, if an inmate is found to have committed a prohibited act. 28 C.F.R. § 541.13 (2011). BOP Program Statement P5884.03 ("Good Conduct Time Under the Prison Litigation Reform Act"), which implements 18 U.S.C. § 3624 and 28 C.F.R. § 523.20, states that "[Good Conduct Time] earned is subject to disciplinary forfeiture or disallowance." (Doc. 9-2 at 36). In this context, "disallowance" means "the withholding of [Good Conduct Time] for the current year in which the offence occurs." (Liotti Decl. ¶ 22); see 28 C.F.R. § 541.13 (Table 4 describes sanctions, including disallowance). "Forfeiture," on the other hand, involves taking back "[Good Conduct Time] which the inmate had

---

[3] Petitioner Hurst was sentenced for an offense committed on or after April 26, 1996. (See Liotti Decl. ¶ 24).

9

earned in past years, which was not subject to a 'disallowance' because of a [Disciplinary Hearing Officer] sanction in that year." (Liotti Decl. ¶ 23 ); see 28 C.F.R. § 541.13 (Table 4 describes sanctions, including forfeiture).

Given that section 3624 specifically states that good time credit which has been awarded does not vest until the date the prisoner is released from custody, we find that the BOP's regulations allowing for forfeiture of good time credit earned in past years are a reasonable interpretation. See 18 U.S.C. § 3624(b)(2) ("Notwithstanding any other law, credit awarded under this subsection after the date of enactment of the Prison Litigation Reform Act shall vest on the date the prisoner is released from custody."); Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44 (1984) (courts will defer to an administrative agency's interpretation of statute it administers if the statute is ambiguous, so long as the agency's interpretation is reasonable). Also, we note that while Congress specified that "[c]redit that has not been earned may not later be granted[,]" it did not state the inverse– that credit that has been earned may not later be taken away. Id. § (b)(1). The purpose of the statute is to encourage good behavior throughout an inmate's term of imprisonment. The BOP's interpretation compounds an inmate's incentive to behave, because he knows that if he misbehaves he risks losing not only that year's fifty-four days, but also time which he has earned in previous years. A prisoner who knows he stands to lose 100 or 200 days worth of earned good time credit will, presumably, be less likely to misbehave than a prisoner who knows he only stands to lose fifty-four days worth of earned good time credit. Thus, petitioner's objection will be overruled.

**3. Amount of Good Conduct Time subject to forfeiture per year**

The magistrate judge, in the course of defining the BOP's concepts

10

of "disallowance" and "forfeiture," stated "[a]s to each of these categories of good time penalties, forfeitures and disallowances, the Bureau of Prisons as a matter of policy has determined that an inmate may only have a total of 54 days of past good time forfeited, and a total of an additional 54 days of current good time credits disallowed, in a particular year." (Report and Recommendation at 7 (Doc. 11)). Petitioner seizes upon the magistrate's statement and uses it to argue that he has twice had more than fifty-four days of good time credit forfeited– 149 days forfeited during the period from June 14, 2003 to June 13, 2004 and 208 days forfeited during the following period from June 14, 2004 to June 13, 2005. (See Sentence Monitoring Good Time Data October 8, 2010 (Doc. 9-2 at 41)). Thus, petitioner argues, he forfeited 249 days too many.

The problem with this argument is that the court can find no basis for the magistrate's statement quoted above. Nothing in the relevant statutes, regulations, or program statements limits the BOP to fifty-four days of forfeited good time credit per year. Rather, the BOP regulation dealing with sanctions, 28 C.F.R. § 541.13, expressly contemplates forfeitures up to 100% of an inmates' good time credit. For example, Table 3 to that regulation describes the sanctions available to a DHO upon finding that an inmate has committed a prohibited act of the "Greatest" severity and one such sanction is that the inmate may "[f]orfeit earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time . . . ." 28 C.F.R. § 541.13 Table 3, Sanction B. The only apparent limit to forfeiture is that an inmate may not forfeit more good time credit days than he has at the time of his violation. Id. Table 4 (1)(b) ("The amount of good conduct time (GCT) available for forfeiture is limited to the total number of days in the 'non-vested' status at the time of the misconduct (less any previous forfeiture)."). Thus, the BOP was within its

11

discretion to impose forfeitures on Hurst of 149 and 208 days, since at those respective times he had 378 and 229 non-vested days. (See Sentence Monitoring Good Time Data October 8, 2010 (Doc. 9-2 at 41)). See also Hill v. Chapman, No. 5:07-HC-2168, 2008 WL 2695818, *4 (E.D.N.C. July 9, 2008) (citing 28 C.F.R. § 541.13 and upholding forfeiture of 400 days of good time credit). Petitioner's objection on this ground will be overruled.

**CONCLUSION**

Because we find that petitioner's objections are without merit, they will be overruled and the report and recommendation will be adopted. The petition for a writ of habeas corpus will be denied. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTTIE R. HURST,<br>        Petitioner | : | No. 3:10cv1868 |
| | : | |
| v. | : | (Judge Munley) |
| | : | |
| WARDEN B.A. BLEDSOE,,<br>        Respondent | : | |

## ORDER

**AND NOW**, to wit, this 28th day of January 2011, upon consideration of Petitioner Scottie Hurst's objections (Doc. 13) to Magistrate Judge Martin C. Carlson's report and recommendation (Doc. 11), it is HEREBY **ORDERED** that:

1) The petitioner's objections (Doc. 13) are hereby **OVERRULED**;

2) The magistrate judge's report and recommendation (Doc. 11) is hereby **ADOPTED**;

3) The petitioner's petition for a writ of habeas corpus (Doc. 1) is hereby **DENIED**;

4) We decline to issue a certificate of appealability; and

5) The Clerk of Court is directed to close the case.

                          **BY THE COURT:**

                          s/ James M. Munley
                          **JUDGE JAMES M. MUNLEY**
                          **United States District Court**